## DAVIS *v.* ALVORD.

1. A suit to recover judgment for labor performed by the plaintiff upon a quartz mill and mine in Montana Territory, and to enforce a mechanic's and laborer's lien upon the defendant's interest in the premises for the payment of the judgment, is a suit in equity, requiring specific directions for the sale of the property, such as are usually given upon the foreclosure of mortgages and the sale of mortgaged premises. The fact that, according to the modes of procedure adopted in the Territory, a personal judgment for the amount found due is usually rendered in such cases, with directions that, if the same be not satisfied out of other property of the debtor, the property upon which the lien is adjudged to exist shall be sold, and the proceeds applied to its payment, does not change the character of the suit from one of equitable cognizance and convert it into an action at law.

2. Mechanics and laborers asserting a lien upon real property for their work, and claiming priority over mortgagees and others, who have acquired interests in the property, must furnish strict proof of all that is essential to the creation of the lien ; and that requires them to prove when the work was commenced, the character of the work, and when it was completed.

3. Work was done by the plaintiff, under a contract with the defendant made Aug. 1, 1869, on two distinct parcels of property situated in Montana Territory, — one a quartz-mill and the other a quartz-mine, — separated a considerable distance from each other. The work on the mill was completed in the fall of 1869 or in the summer of 1870. Nothing was done afterwards, except to make occasional repairs as they were needed. The work on the mine was done in 1870, but it was not shown when the work was commenced. In June, 1871, upon an accounting between the plaintiff and the defendant, there was found due to the plaintiff a large sum, which the parties agreed should be a lien upon the mill and mine in equal proportions. Notices claiming a lien upon each for the amount as thus apportioned were accordingly filed in the recorder's office. *Held*, 1st, That a lien did not arise from this contract of apportionment, or from the special contract under which the work was done, but from the work itself, which was performed upon the property ; 2d, That the work being done on different parcels of property, the lien claimed on one was to be considered separately from the lien claimed on the other ; 3d, That the notice, so far as the mill was concerned, was filed too late, the statute requiring the notice to be filed within sixty days after the completion of the work; and that the occasional repairs subsequently made could not be added to the work done months before, so as to render the whole work one continued performance for which a single lien could be claimed within sixty days after the last repairs; 4th, That it not appearing when the work upon the mine was commenced in 1870, it will not be presumed that it was commenced before the mortgage of the defendant was executed and recorded in September of that year, so as to give to the lien for the work priority over the mortgage.

APPEAL from the Supreme Court of the Territory of Montana.

*Mr. R. T. Merrick* and *Mr. M. F. Morris* for the appellant.
*Mr. J. Hubley Ashton* and *Mr. Nathaniel Wilson*, contra.

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit to recover a judgment against the defendant, Charles Hendrie, for labor performed by Alvord upon a quartz-mine and a quartz-mill in Montana Territory, of which that defendant is alleged to be part owner, and to enforce a mechanic's and laborer's lien upon his interest in the premises for its payment. It is essentially a suit in equity, requiring specific directions for the sale of the property, such as are usually given upon the foreclosure of mortgages and sale of mortgaged premises. The fact that, according to the modes of procedure adopted in the Territory, a personal judgment for the amount found due is usually rendered in such cases, with directions that, if the same be not satisfied out of other property of the debtor, the property upon which the lien is adjudged to exist shall be sold, and the proceeds be applied to its payment, does not change the character of the suit from one of equitable cognizance and convert it into an action at law. It is not an uncommon practice in many of the States for the courts to direct, in suits for the foreclosure of mortgages, a formal rendition of judgment for the amount due upon the obligations secured, instead of directing a reference to a master to ascertain and report the amount. *Rollins* v. *Forbes*, 10 Cal. 299. The complaint is not open to objection for misjoinder of causes of action, because the personal judgment and the enforcement of the lien are both prayed for at the same time. The rendition of the judgment is only a mode of judicially declaring the amount due, and in no respect affects the equitable jurisdiction of the court. The case is, therefore, properly brought here by appeal.

It appears from the record, that, on the 1st of August, 1869, the plaintiff entered into a contract with the defendant Hendrie to work for him in erecting and repairing a quartz-mill and in opening and developing a quartz-mine, in Montana Territory, for the sum of $2,500 a year. The mill was distant about a quarter of a mile from the mine, and it was part of the contract that one-half of the time of the plaintiff should be devoted to each.

The erection of the mill was commenced in August, 1869, and occupied about forty days. It was substantially completed in the fall of that year. Some iron guides only were put in during the summer of 1870. After that, nothing was done on the mill, except to make occasional repairs as they were needed.

It does not appear when the work was commenced on the mine. The plaintiff states that, in 1870, he put up steam hoisting-works, laid tracks, and made cars, and did every thing necessary to keep the mine in repair; but as to the commencement of the work in that year he is silent. The notices claiming a lien, and the affidavits attached, are not evidence on this point against the defendants.

The statute was designed to give security to those who, by their labor, skill, and materials, add value to property, by a pledge of the interest of their employer for their payment; and for that purpose it subordinates all other interests acquired subsequent to the commencement of their work, although no notice that a lien may even be claimed is required, except within sixty days after the work is completed. Mortgagees and others acquiring interests in property against which such a lien is sought to be enforced have a right, therefore, to call for strict proof of all that is essential to the creation of the lien; and that includes proof of the commencement of the work, of its character, and of its completion. The commencement of the work must be shown, for from that date the lien attaches, if at all. The character of the work must be shown, for it is not for all kinds of work that a lien is allowed. The completion of the work must be shown, for notice of claiming a lien must be filed in the recorder's office within sixty days from that time. This proof must be furnished by the party who asserts the existence of the lien.

From this statement the question as to the priority of the lien claimed by Alvord over the mortgages of the defendant Davis may be readily answered. The work being done on different parcels of property, the lien claimed on one is to be considered separately from that claimed on the other. The parties, the plaintiff and Hendrie, had an accounting on the 25th of June, 1871, when over $3,700 were found due to the plaintiff. It was then agreed between them that this

amount should be a lien upon the mill and mine in equal proportions. Notices claiming a lien upon each for the amount thus apportioned were accordingly filed in the recorder's office on the following day. A lien did not, however, arise from this contract of apportionment, or from the special contract under which the work was done: it arose from the work which was performed upon the property. It is the work of mechanics and laborers, or the material furnished by them or others, by which value is added, or supposed to be added, to property, which creates the lien under the statute, upon notice claiming it being seasonably filed in the proper recorder's office.

So far as the mill was concerned, the notice was filed too late. That building, as already stated, was completed in 1869, or at least in the summer of 1870, when the iron guides were put in. Occasional repairs, if subsequently made (of which, however, the record furnishes no evidence), could not be added to the work performed in the erection of the building months before, so as to render the whole work one continued performance, for which a single lien could be claimed within sixty days after the last repairs.

So far as the mine is concerned, there is no evidence of the time in 1870 when the work upon it commenced. The hoisting-works were put up, the track was laid, and the cars were made some time during that year; but beyond this we are not informed. All this might have been done after the last mortgage held by the defendant Davis was executed and recorded in September of that year. We cannot presume, in the absence of proof to that effect, that the work was commenced before that time, and thus give to the lien for the work priority over the mortgage. The failure of the plaintiff to show the commencement of the work, when the proof of that fact was within his power, leads to the conclusion that the truth would not have subserved his interests. At any rate, as the case stands, there is nothing in the record which warrants a subordination of the interests of the mortgagee to the claim of the plaintiff. The finding of the District Court, that one-half of the amount due to the plaintiff was a valid lien on the mine from Aug. 1, 1869, and the other half a lien on the mill from that date, does not help the case; for that finding is only a conclusion

of law.    No facts are stated upon which. the conclusion can be sustained.

Whilst the statute giving liens to mechanics and laborers for their work and labor is to be liberally construed, so as to afford the security intended, it cannot be too strongly impressed upon them, that they must not only bring themselves by their notices, as was done in this case, clearly within the provisions of the statute, but they must be prepared, if the priority of their lien be disputed, to show a compliance with those provisions, and to fix with certainty the commencement and completion of their work ; in which particulars the proof here is wanting.

The decree of the District Court of the Territory must, therefore, be modified so as to give the mortgages held by the defendant Davis a priority over the lien of Alvord in the distribution of the proceeds arising upon the sale of the interest of the defendant Hendrie ; and the cause will be remanded to the Supreme Court of the Territory, with directions to modify the decree in that respect; and it is                    *So ordered.*