### SPALDING et al. v. MARTIN.

(Circuit Court of Appeals, Ninth Circuit. April 9, 1917.)

No. 2741.

1. MINES AND MINERALS ⬅112(3)—MINER'S LIEN—VALIDITY.

Act Alaska April 30, 1913 (Laws 1913, c. 79), entitled "An act to create, establish and provide for liens on mines in favor of laborers and materialmen, and repealing all acts or parts of acts in conflict herewith," which became effective July 1, 1913, and gave laborers and materialmen liens upon the mines or ore or other precious mineral mined for all work or material furnished for the prosecution of mining operations, etc., declared that its provisions should not apply to the owner or owners of any mine or mining claim worked by a lessee, provided that the lessor or lessors shall have recorded a copy of such lease and posted a notice in writing at not less than three conspicuous places upon such mine, stating the names of the lessee or lessees. This act, which superseded prior acts containing similar provisions, was repealed by Act Alaska April 21, 1915 (Laws 1915, c. 13). A mine owner who leased his claim failed to record the lease or to post the notices required. Held, that laborers and materialmen who performed their labor and furnished materials while the act was in operation were entitled to liens.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 235.]

2. STATUTES ⬅107(2)—VALIDITY—TITLE OF ACT.

In such case, though Act Cong. Aug. 24, 1912, c. 387, 37 Stat. 512, providing for a Legislature for the territory of Alaska, declared in section 8 (Comp. St. 1916, § 3535) that no law should embrace more than one subject, which should be expressed in its title, Act Alaska April 30, 1913, is not invalid, as containing more than one subject not expressed in its title; the whole purpose of the act being to provide for liens on mines in favor of laborers and materialmen.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 122.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska.

Suit by S. A. Martin against W. L. Spalding and the Reliance Mining Company, a corporation. From a judgment for plaintiff, defendants appeal. Affirmed.

McGowan & Clark, John Knox Brown, Thomas A. McGowan, and John A. Clark, all of Fairbanks, Alaska, for appellants.

Morton E. Stevens and Thomas A. Marquam, both of Fairbanks, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This suit was commenced in the court below by the present appellee, for himself and as assignee of 13 other laborers, to foreclose liens on the Soo quartz mining claim, one of a group of such claims owned by the Reliance Mining Company, a corporation, and situate in the Fairbanks mining precinct of the territory of Alaska. The complaint contains 27 causes of action, 13 of them being based upon the labor alleged to have been performed by the plaintiff and his assignors during a period commencing in July, 1913, and ending October 8, 1913, and 13 for like labor alleged to have been performed by the plaintiff and his assignors for a period commencing October 9, 1913, and ending November 10, 1913, and 1 for like labor for the period extending from August 3 to November 1, 1913.

Besides the appellant Spalding and the mining company, one Brumbaugh was made a defendant to the suit, each of whom filed a separate answer; that of the mining company being a general denial of the material allegations of each of the alleged causes of action, and also setting forth as an affirmative defense that, prior to the commencement of any work described in the complaint by the plaintiff or his assignors, the defendant company, the owner of the property, caused to be posted upon the Soo quartz mining claim, at the times and places and in the manner prescribed by law, notices in writing disclaiming any responsibility for any debts contracted or incurred by any lessees or layman working or operating on that claim, or for any material furnished therefor. The defendants Spalding and Brumbaugh in their respective answers denied each of the material allegations of the complaint.

Thereafter a reply was filed by the plaintiff, putting in issue the affirmative matter set up in the answer of the mining company, and the case was tried by the court, which made findings and rendered judgment in favor of the plaintiff against the defendants Spalding and the Reliance Mining Company on the causes of action based on the liens for labor performed by the plaintiff and his assignors prior to and ending with October 8, 1913, and against the plaintiff for labor so performed subsequent to October 8, 1913. and in favor of the defendant Brumbaugh in respect to all of the alleged causes of action. The aggregate amount of the judgment given the plaintiff against the defendants Spalding and the Reliance Mining Company was $4,125.25, with costs, and it decreed liens and a foreclosure thereof upon all of

the Soo quartz mining claim, together with the quartz mill, machinery, tools, and plant situate thereon.

The action was based upon the act of the territorial Legislature of Alaska, passed at its first session, and entitled "An act to create, establish and provide for liens on mines in favor of laborers and materialmen, and repealing all acts and parts of acts in conflict herewith," being chapter 79 of the Session Laws of Alaska of 1913, p. 308.

It is conceded that the Reliance Mining Company owned the claims mentioned, and on May 13, 1912, leased by written instrument to Spalding and two others (whose interests he afterwards acquired) that portion of the Soo claim described as follows:

"Beginning at the westerly end thereof, on the line between said Soo claim and the Wild Rose claim, and running thence easterly a distance of 300 feet along the vein or lode heretofore discovered and exposed on said ground, and extending vertically for a distance of 100 feet; the portion herein leased being a block 300 feet in length and 100 feet in depth on said vein or lode, on which the lessees are now engaged in working together with the necessary tools, machinery, and buildings now situate on said property, and belonging to lessors."

The lease expressly declared its purpose to be the "prospecting and development" of the property, the terms of it to extend from its date to July 1, 1913, and one of its conditions was that:

"For and in consideration of services rendered by lessees in opening and developing said property, said lessees shall retain all the gold and other precious metals and minerals extracted from the portion of said ledge herein leased to them, and need not pay to lessor any part or portion thereof."

On September 16, 1912, the lessor by resolution of its board of directors extended the term of the lease to January 1, 1914, and on June 9, 1913, executed to Spalding a new lease covering all of the Soo claim for term of 10 years from its date, which said second lease was expressly made subject to—

"all outstanding leases on said mining claim, or any portion thereof, whether the same have expired or expire at some time in the future, and the lease is accepted by said lessee expressly subject to the right of all persons now holding leases on said property or any part thereof."

The latter lease reserved as rental and royalties to the lessor 10 per cent. of the gross output of the mine.

[1] From the foregoing statement of the conceded facts it will be seen that the work of the plaintiff and his assignors, for which the court below gave the plaintiff judgment, was performed during a period when the defendant Spalding had a lease covering the entire Soo claim; for that work was, as has been stated, performed during the period commencing in July, 1913, and ending October 8th of the same year, which period of time was covered by the lease of May 13, 1912, effective from its date of July 1, 1913, and which lease was by resolution of the board of directors of the lessor extended to January 1, 1914. True, that lease did not cover the whole of the Soo claim; but the lease from the same lessor to the defendant Spalding of June 9, 1913, effective for 10 years from its date, *did* embrace that *entire*

claim, and while expressly made subject to any and all leases theretofore made by the lessor, it in no manner *curtailed,* so far as appears from the record in this case, any of the rights either of the defendant Spalding or of the plaintiff or his assignors respecting the work which forms the basis of the present suit; on the contrary, at the time that work was commenced, and during the whole time of its prosecution, the entire Soo claim was under lease to the employer of those miners. Therefore, if by the laws of the territory the plaintiff and his assignors as employés of the lessee were given a lien upon the ground in question and the steps necessary to acquire such lien were taken, it is clear that the plaintiff was entitled to a decree of foreclosure to the extent that such liens existed.

We are therefore to ascertain whether, under the laws of Alaska, the plaintiff and his assignors were given and acquired the liens awarded them by the court below. The original lien law of that territory gave, among other things, a lien to laborers and other persons performing labor upon the construction, development, alteration, or repair of any building, flume, mine, tunnel, aqueduct, or other structure, and made the person in charge of such mine the owner's agent, and declared, if such work was in fact done by any other than the owner, the latter might avoid liability therefor by giving notice that he would not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon the premises. Sections 262, 265, Carter's Civil Code, and sections 691, 694, Compiled Laws of the Territory of Alaska. In construing those sections, it was held by this court that, in the case of mines, the lien authorized was limited to work done in the development or improvement of the mine. Pioneer Mining Co. v. Delamotte, 185 Fed. 752, 108 C. C. A. 90; Andrews v. Ladd, 188 Fed. 313, 110 C. C. A. 291; Noble v. Gustafson, 204 Fed. 69, 122 C. C. A. 383.

By an act approved June 25, 1910, entitled "An act to create, establish, and enforce a miner's labor lien in the territory of Alaska, and for other purposes" (36 Stat. 848, c. 422 [Comp. St. 1916, §§ 5059–5069]), Congress provided:

"That every miner or other laborer who shall labor in or upon any mine or mining ground for another in the territory of Alaska in digging, thawing, conveying, hoisting, piling, cleaning up, or any other kind of work in producing any mineral-bearing sands, gravels, earth, or rock, gold or gold dust, or other minerals, or shall aid or assist therein by his labor as cook, engineer, fireman, or in cutting and delivering wood used in said work, or in work in any like capacity in producing the dump, shall, where his labor directly aided in such production, have a lien upon the dump or mass of mineral-bearing sands, gravels, earth, or rocks, and all gold and gold dust, or other minerals therein, and all gold and gold dust extracted therefrom, for the full amount of wages for all the time which he was so employed as such laborer in producing the said dump, within one year next preceding his ceasing to labor thereon; and to the extent of the labor of the said miner or other laborer actually employed or expended thereon, within one year next prior to ceasing to labor thereon the said lien shall be prior to and preferred over any deed, mortgage, bill of sale, attachment, conveyance, or other claim, whether the same was made or given prior to such labor or not: Provided, that this preference shall not apply to any such deed, mortgage, bill of sale, attachment, conveyance, or other claim given in good faith and for value prior to the approval of this act."

At its first session the Legislature of Alaska passed an act, approved April 30, 1913, and made effective July 1, 1913, entitled "An act to create, establish and provide for liens on mines in favor of laborers and materialmen, and repealing all acts and parts of acts in conflict herewith" (Session Laws 1913, p. 308), which act was the basis of the judgment given by the court below in the present case, and which act, it is insisted on the part of the appellants, is unconstitutional and void on various grounds specifically pointed out and elaborately discussed in their brief. The act of April 30, 1913, was expressly repealed by the subsequent act of the Legislature of the territory, approved April 21, 1915, and entitled:

"An act to provide for the liens of laborers and miners working on, in and about mines and mining property, repealing the act of the Legislature of the territory of Alaska, entitled 'An act to create, establish and provide for liens in favor of laborers and materialmen, and repealing all acts in conflict herewith,' approved April 30, 1913, and declaring an emergency." Chapter 13, p. 29, Session Laws 1915.

Prior to the passage of the act of April 30, 1913, there was no provision of the laws of Alaska requiring the recording of any lease of any mine or mining claim, or the posting of any notice stating the name or names of the lessee or lessees or other person or persons other than the owner and operator of the mine, and stating that the owner thereof would not be responsible for any work done under such lease; but by that act such requirements were made, and by it liens were given, not only to ordinary miners, but for all other classes of work for which the court below awarded liens in the present suit. And the court having expressly found, what the evidence showed without conflict, that the lease under which the defendant Spalding worked and operated the mine in question was never recorded or filed for record, and that the owner of the property failed to post any notice containing the name of the lessee, as required by the act of April 30, 1913, it is clear that the liens here involved were properly sustained, unless it can be held that that act was unconstitutional and void.

[2] We are unable to so hold. Much is said in the brief of the appellants regarding the alleged failure of the act to indicate in its title the nature of its numerous provisions; but we think them all germane to its main subject-matter, expressly declared in its title to be "to create, establish and provide for liens on mines in favor of laborers and materialmen, and repealing all acts and parts of acts in conflict herewith." The act of Congress of August 24, 1912 (37 Stat. 512), providing for a Legislature for the territory of Alaska, contains a provision reading in part as follows:

"Sec. 8. * * * No law shall embrace more than one subject, which shall be expressed in its title."

And it is contended on the part of the appellants that the act of April 30, 1913, contains many subjects, and is therefore void. A careful consideration of it shows that the subject undertaken to be provided for thereby is liens on mines in favor of laborers and materialmen, and that the various matters specified by counsel as being independent

subjects are but designations by the Legislature as to who should be considered such laborers, and as to what property should be considered appurtenant to such mines, and subject to the liens provided for, and how such liens should be secured.  It will be time enough to consider whether or not such liens can be held to take precedence over existing mortgages or other pre-existing liens when the question arises; in the present case it is not involved.  Here each of the liens sustained by the judgment appealed from was authorized by the act of April 30, 1913, and secured, according to the findings of the trial court, by appropriate proceedings on the part of the respective claimants, which is all that is necessary to an affirmance of the judgment.

Judgment affirmed.